**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SUSAN KESICK,**

               **Plaintiff,**

      **v.**                                       **1:10-CV-1248**

**RICHARD ENRIQUE ULLOA, LUIS**
**WILFREDO RIVERA,  and JOHN**
**DOE,**

               **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.**      **INTRODUCTION**

     Plaintiff Susan Kesick commenced this action asserting claims pursuant to the civil

Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 _et seq._ ("RICO"),

and New York State common law.[1]  Plaintiff moves for summary judgment on her RICO

claims, or, in the alternative, for default judgment against Defendants for failing to provide

any discovery.  See dkt. # 13.  Defendant Richard Enrique Ulloa's request for permission

to file late opposition papers to Plaintiff's motion for summary judgment, see dkt. # 26, was

denied.  See 5/4/12 by Dec. & Ord., dkt. # 28.  Defendant Rivera filed no response to the

motion, and Defendant Doe has not been identified.  For the reasons that follow, Plaintiff's

_____

[1]The state common law claims are for abuse of process and prima facie tort.

1

motion for summary judgment is granted in part as against Defendants Ulloa and Rivera. The claims against defendant John Doe are dismissed for failure to name and serve the individual.

## II.   STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011)("Summary judgment is appropriate only if, after drawing all permissible factual inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.").  Even though the motion is unopposed, the Court may not grant summary judgment unless it determines that the moving party is entitled to judgment as a matter of law.  Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) ("Even unopposed motions for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.") (internal quotation marks omitted).

## III.   BACKGROUND

Due to Defendants' failures to file proper opposition to the pending motion despite being served with the motion papers and the Northern District's "NOTIFICATION OF THE CONSEQUENCES OF FAILING TO RESPOND TO A SUMMARY JUDGMENT MOTION," see dkt. # 19,

2

the supported factual allegations in Plaintiff's papers are deemed admitted for purposes of this motion. See Fed. R. Civ. P. 56(e)(2); N.D.N.Y. L.R. 7.1(a)(3); see also Faretta v. California, 95 S. Ct. 2525, 2541 n. 46 (1975)("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); Edwards v. INS, 59 F.3d 5, 8 (2nd Cir. 1995)("While a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them."); N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts).  These facts are as follows.

On March 1, 2009, as the result of a traffic stop, a criminal complaint was sworn out against Defendant Ulloa by Ulster County Deputy Sheriff George F. Goodwin. The criminal complaint accused Ulloa of Aggravated Unlicensed Operation of a Motor Vehicle ("AUO"), a misdemeanor violation of Section 511 of the New York Motor Vehicle and Traffic Law.  In connection therewith, Ulloa was issued an appearance ticket directing him to appear before the Ulster Town Court at 2:30 p.m. on March 4, 2009.  Ulloa failed to appear in Town Court on the designated return date.

On March 5, 2009, Plaintiff Susan Kesick, a Justice of the Ulster Town Court

reviewed and signed an Arrest Warrant for Ulloa on his misdemeanor AUO charge and for his failure to appear in Town Court the previous day.  Ulloa was subsequently arrested, appeared before the Town Court, and released on bail on April 8, 2009.  At the time of his release, Kesick signed an Order for Ulloa to undergo a psychological evaluation pursuant to Criminal Procedure Law Article 730 to determine if he possessed the capacity to understand the proceedings against him.  Plaintiff asserts that, thereafter and as part of a pattern of racketeering activity by a criminal enterprise and furtherance of a scheme to defraud, extort, and otherwise damage Kesick, Defendants Ulloa, Rivera and Doe, with the assistance of others, began sending and filing fraudulent notices, liens and UCC Financing Statements as set forth below.

On April 21, 2009, Ulloa commenced an action against Kesick by filing with the Ulster County Clerk's Office and mailing Kesick an "Order" and "Criminal Complaint" together with two additional nonsensical documents identified as: "Notice and Demand: Writ of Error Coram Nobis Demand For Reversal of Order Due to Lack of Jurisdiction" ("Writ of Error") and "Petition for Writ of Mandamus for an Order to Cease and Desist the Action in 'Town of Ulster Court', 'Ulster Town Court'" ("Writ of Mandamus").  Defendant Rivera assisted Defendant Ulloa with these documents and attested to their accuracy. Ulloa also sent, by registered United States Mail, the "Order" and "Criminal Complaint" to Eric Dinallo, Superintendent of the New York State Insurance Commissioner's Office. Ulloa also mailed his "criminal complaint" to numerous other persons, including Deputy Chief Administrative Judge Jan Plummadore, Ulster County Executive Michael Hein, New York State Attorney General Andrew Cuomo, and New York State Comptroller Thomas DiNapoli.

4

In his "criminal complaint", Ulloa falsely accused Kesick, Deputy Goodwin and Assistant Ulster County District Attorney David Boole of kidnaping, conspiracy, racketeering, perjury, money laundering and mail fraud, among other crimes.  Included as an exhibit to Defendant's "criminal complaint" was an "Invoice" in the amount of $8,820,750.00 for some unknown purpose.  Despite having failed to personally serve Kesick or any of the other defendants named in the action, on June 4, 2009, Ulloa filed an "Order for Summary Judgment" which the Court deemed a notice of motion seeking a default judgment.

On June 17, 2009, Kesick served Answers to Defendant's "Criminal Complaint", "Writ of Error," and "Writ of Mandamus." Thereafter, Kesick and the other named defendants cross-moved for various forms of relief, including dismissal of the action.  On July 28, 2009, Ulloa filed with the Town of Ulster Justice Court Clerk and mailed an "Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" ("Negative Averment").  Ulloa's Negative Averment was a purportedly self executing document in which he claims to be owed several million dollars for "crimes," fraud, racketeering and theft of public funds, plus interest, treble and punitive damages.

On August 24, 2009, Ulloa filed with the Town of Ulster Justice Court and mailed a "Demand for Payment", "Invoice" and "Affidavit of Notary Presentment" (hereinafter "Notary Presentment") falsely claiming that Kesick owed him the sum of $176,000,000.00. Ulloa's "Demand for Payment", "Invoice" and "Notary Presentment" falsely accuse Kesick of committing numerous civil and criminal wrongs including, *inter alia*, fraud, racketeering, theft of public funds and continuing trespass.  Ulloa's fraudulent papers were also sent via United States Mail to the numerous individuals listed in the Notary Presentment.

5

On September 20, 2009, Defendants filed with the Town of Ulster Justice Court Clerk and mailed a "Second Demand for Payment", "Invoice" and "Notary Presentment" again falsely claiming Kesick owed Ulloa the sum of $176,000,000.00.  Defendants' "Second Demand for Payment", "Invoice" and "Notary Presentment" again falsely accuse Kesick of committing various civil and criminal wrongs including, *inter alia*, fraud, racketeering, theft of public funds and continuing trespass.  Plaintiff believes that Defendants' "Second Demand for Payment", "Invoice" and "Notary Presentment" were sent via United States Mail to the numerous individuals listed in the Notary Presentment.

On October 23, 2009, Defendants filed with the Town of Ulster Justice Court Clerk a "Final Demand for Payment", "Invoice" and "Notary Presentment", again reasserting the false claim that Kesick owed Ulloa the sum of $176,000,000.00.  Defendants' "Final Demand for Payment", "Invoice" and "Notary Presentment" again falsely accuse Kesick of committing various civil and criminal wrongs including, *inter alia*, fraud, racketeering, theft of public funds and continuing trespass.   Plaintiff believes that Defendants' "Final Demand for Payment", "Invoice" and "Notary Presentment" were sent via United States Mail to the numerous individuals listed in the Notary Presentment.

On November 10, 2009, Defendants filed with the Town of Ulster Justice Court Clerk and the Ulster County Clerk and mailed a bogus "Notice of Final Determination and Judgment in Nihil Dicit" (hereinafter "Judgment"), signed by Ulloa, falsely purporting to be a final judgment in the amount of $176,000,000, and indicating that it was a "self executing power of attorney to file liens and encumbrances against any and all property" owned by Kesick.

On January 7, 2010, New York Acting Supreme Court Justice Kimberly A.

6

O'Conner issued a Decision and Order dismissing the action against Kesick based upon lack of personal jurisdiction.  Despite the fact the action against Kesick had been dismissed, on February 12, 2010, Defendants mailed UCC-1 Financing Statement No.: 201002120082030 and a "Notice of Claim of Maritime Lien" to the New York State Department of State for purposes of filing those documents.  In the UCC-1 filing, Ulloa falsely claimed an interest in virtually all of Kesick's personal and real property to satisfy an alleged lien in the sum of $5,280,000,000.00 (or $176,000,000.00 in silver).

The New York State Department of State records reflect that Ulloa has filed no less than 35 similar liens and UCC-1 Financing Statements in New York as against various government entities, public servants, judges, banks, law firms and private individuals on nearly identical fraudulent grounds.  Moreover, Ulloa filed dozens of similarly false liens and UCC-1 financing statements against other government entities, public servants, judges, banks, law firms and private individuals in the State of Washington.  Although Kesick has thus far been unable to locate or discover additional liens filed against her in other states, she believes that, given Ulloa's pattern of harassment and fraudulent filings as against others (including actions for which he has been convicted of multiple felonies), Ulloa has filed (or will file in the future) similar liens and financing statements against her personal and real property.

There never has been any contract or agreement between Kesick and Ulloa that would give rise to any lien or security interest in any of Kesick's real or personal property in favor of Ulloa.  In fact, Kesick did not know who Ulloa was until he was brought before her Court on the misdemeanor Vehicle and Traffic Law charge.  There is no truth to the statements contained in the documents filed by Defendants in the New York State Courts

and Office of the Secretary of State which purportedly perfect a security interest in Kesick's real and personal property.

Defendants have also caused false information regarding Kesick's creditworthiness to be filed in the permanent records of the State of New York, and these cannot be erased. Further, Ulloa has demonstrated his willingness to initiate lawsuits against Kesick without any basis in law or fact, in an attempt to maliciously harass, intimidate and extort money or other benefits from her and other government employees. Plaintiff asserts that Ulloa's frivolous lawsuits and proceedings have already caused immeasurable harm to her name, reputation and mental health.

Kesick was also called as a victim/witness by the Ulster County District Attorney to give testimony to a grand jury that indicted Ulloa on state criminal charges. As a direct result of giving this testimony, Kesick has fears about what Ulloa and/or his associates may do to her or her family. Kesick points to a "summons" (a copy of which was filed in Ulloa's federal criminal case) showing that a dozen people convened a "de jure" court in Ulster County calling for their "County Rangers" to arrest Kesick and seize her assets to cover a purported $176,000,000 debt. See United States v. Ulloa, Case No. 1:10-cr-00321 (N.D.N.Y.), dkt. # 62. Kesick viewed this summons as a threat. The Ulster Police Department issued a security bulletin concerning Ulloa and published it to all Town Court and Town Hall employees warning of the "credible concern" to Kesick's safety posed by Defendants and their conspirators. Due to security concerns caused by Defendants, bullet proof glass was installed inside the Ulster Town Hall building and security has otherwise been tightened in the Town Hall, Town Court courtroom and the Court Clerk's Office.

Kesick was partially successful in an action in New York State Supreme Court

8

against Ulloa.  On February 9, 2011, New York State Acting Supreme Court Justice Melkonian, recognizing the "obvious frivolity" of Ulloa's filings against Kesick, issued an injunction prohibiting Ulloa from filing any further *pro se* actions or proceedings against Kesick without prior court approval.  That injunction is only valid with regard to New York State courts, and does not extend to the federal system.

On December 30, 2010, after a three day jury trial, Ulloa was found guilty of all seven counts of a Superseding Indictment that charged him with Mail Fraud, in violation of 18 U.S.C. §§ 1341, 1349 and 2.  The conduct in that case is the same fraudulent actions complained of herein and which included conduct directed at numerous victim, including Kesick. See United States v. Ulloa, Case No. 1:10-cr-00321, dkt. # 103, Trial Tr. at 26-27. On December 14, 2011, Defendant Ulloa was sentenced to 60 months imprisonment by this Court.

Plaintiff commenced this action asserting RICO claims pursuant to 18 U.S.C. § 1964(c) (First, Second, and Third Claims), state common law abuse of process (Fourth Claim), and state common law prima facie tort (Fifth Claim).  On this motion, Kesick seeks a judgment in her favor on the First, Second and Third Claims; an inquest on the amount of damages that should be awarded;[2] and an Order that:

> (1) Defendant Ulloa be enjoined and restrained from filing or participating, directly or indirectly, in any future lawsuits in the Federal Courts, pro se, as against Justice Kesick, her family or her property without first obtaining approval of a Judge of this Court;
>
> (2) Defendants be enjoined and restrained from associating with the Tri-Republic Assembly, or any of its members, for any commercial purpose;

---

[2]Plaintiff seeks an award of treble compensatory damages, punitive damages, costs, and attorneys' fees.

(3) Defendants be prohibited from filing any liens or other purported interest in Justice Kesick's personal or real property; and

(4) Defendants be directed to refrain from any contact with Justice Kesick or members of her family and to remain no less than 1000 feet from her or any members of her family, their places of work and property.

Pl. MOL p. 9.

## IV.   DISCUSSION

### a.  Doe Defendant

The John Doe defendant has not been identified or served with process.  The time to do so has expired.  Consequently, all claims against John Doe are dismissed for failure to prosecute.

### b.  Summary Judgment on RICO Claims

To establish a RICO claim, a plaintiff must show: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962." De Falco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001); see also 18 U.S.C. § 1964(c) (to have a remedy under RICO, a plaintiff must be "injured in his business or property by reason of a violation of section 1962").   To prevail on a claim under § 1962(c), a plaintiff must demonstrate: (1) that the defendant is a person who (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly . . . participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983), cert. denied, 465 U.S.1025 (1984); see also DeFalco, 244 F.3d at  306 (A civil RICO violation consists of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.")(citing Sedima, S.P.R.L. v. Imrex Co., 473

10

U.S. 479, 496, 105 S. Ct. 3275 (1985)).  The Court will address these elements seriatim.

### 1.  The Defendants are persons covered by RICO.

A "person" for RICO purposes "includes any individual capable of holding a legal or beneficial interest in property". 18 U.S.C. § 1961(3).  Defendants, both citizens and residents of New York and the United States, are individuals capable of owning property.

### 2.  The Defendants committed two or more acts constituting a pattern of racketeering activity.

In order to recover under RICO, Plaintiff must also establish that the defendants committed two or more acts constituting a "pattern of racketeering activity". 18 U.S.C. § 1962(5).  A pattern of racketeering activity requires "at least two acts of racketeering activity" occurring within ten years of each other. 18 U.S.C. § 1961(5).  RICO defines "racketeering activity" as "any act or threat" involving a number of crimes and offenses, including mail fraud. 18 U.S.C. § 1961(1).  "To establish a pattern, a plaintiff must [] make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)); see United States v. Indelicato, 865 F.2d 1370, 1382 (2d Cir.1989).  A plaintiff can establish that acts are related by proof of temporal proximity, common goals, similarity of methods, or repetition.  There must also be some relationship between the acts and the alleged enterprise. Indelicato, 865 F.2d at 1384.

"The . . .  so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern - a series of related predicate acts extending over a substantial

period of time - or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Spool v. World Child Intern. Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008)(citations omitted).  To satisfy closed-ended continuity, Plaintiff must generally demonstrate that the RICO predicate activity occurred over a period of two or more years. See id. at 184 ("Since the Supreme Court decided H.J. Inc., we have never held a period of less than two years to constitute a 'substantial period of time.')(citations omitted); see also id. ("Although we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where, as here, ...  the activities alleged involved only a handful of participants and do not involve a complex, multi-faceted conspiracy.")(internal quotation marks and citations omitted).  "To satisfy open-ended continuity, the plaintiff ... must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed."  Cofacrèdit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 243 (2d Cir.1999). This threat is generally presumed when the enterprise's business is primarily or inherently unlawful. Id. at 242-43.

As indicated above, Defendant Ulloa was convicted by a jury of multiple counts of mail fraud for the conduct underlying this action.  Moreover, Plaintiff has demonstrated that Defendants used the U.S. mail to further their scheme against her on at least nine separate occasions over a period of approximately a year and a half.[3]  In this

_____

[3]These mailings are:

1) Defendants sent, by registered United States Mail, the "Order" and "Criminal Complaint" to Eric Dinallo, Superintendent of the New York State Insurance Commissioner's Office. (See Kesick Dec., Exhibit "E" and

(continued...)

regard, Defendants utilized the United States mails in conjunction with their filing of

frivolous lawsuits and "criminal complaints," fake court orders, bogus liens, as well as

threatening and dunning collection demands seeking sums ranging from $8 Million to over

$5.8 Billion dollars against Kesick and numerous other victims.  Defendants' acts are

related inasmuch as they share a common purpose to defraud others and to serve as a

---

[3](...continued)
"F").

2) On July 28, 2009, Defendants filed with the Town of Ulster Justice Court Clerk and mailed an "Affidavit of Negative Averment, Opportunity to Cure, and Counterclaim" ("Negative Averment"), (See Kesick Dec., Exhibit "L").

3) On August 24, 2009, Defendants filed with the Town of Ulster Justice Court and mailed a "Demand for Payment", "Invoice" and "Affidavit of Notary Presentment" (hereinafter "Notary Presentment") falsely claiming Justice Kesick owed Uolla the sum of One Hundred Seventy Six Million and 00/100 Dollars ($176,000,000.00). (See Kesick Dec., Exhibit "M").

4) On September 20, 2009, Defendants filed with the Town of Ulster Justice Court Clerk and mailed a "Second Demand for Payment", "Invoice" and "Notary Presentment" again falsely claiming Justice Kesick owed Ulloa the sum of One Hundred Seventy Six Million and 00/100 Dollars ($176,000,000.00). (See Kesick Dec., Exhibit "N").

5) On October 23, 2009, Defendants filed with the Town of Ulster Justice Court Clerk a "Final Demand for Payment", "Invoice" and "Notary Presentment", again reasserting the false claim that Justice Kesick owed Ulloa the sum of One Hundred Seventy Six Million and 00/100 Dollars ($176,000,000.00). (See Kesick Dec., Exhibit "O").

6) On November 10, 2009, Defendants mailed and filed with the Town of Ulster Justice Court Clerk and the Ulster County Clerk a bogus "Notice of Final Determination and Judgment in Nihil Dicit" (hereinafter "Judgment") ,signed by Defendant, falsely purporting to be a final judgment in the amount of $176,000,000, and indicating that it was a "self executing power of attorney to file liens and encumbrances against any and all property" owned by Justice Kesick. (See Kesick Dec., Exhibit "P").

7) On February 12, 2010, Defendants mailed and filed UCC-1 Financing Statement No.: 201002120082030 and a "Notice of Claim of Maritime Lien" (together with copies of Exhibits L-O) with the New York State Department of State. (See Kesick Dec., Exhibit "R").

8) Defendant Ulloa filed dozens of similarly false liens and UCC-1 financing statements against other government entities, public servants, judges, banks, law firms and private individuals in the State of Washington, acts for which he was ultimately convicted and sentenced to 60 months in prison by this Court. (See Kesick Dec., Exhibit "T").

9) On November 22, 2010, Defendant Ulloa filed a "summons" in his Federal criminal case showing a dozen other people convened a "de jure" court in Ulster County calling for their "county Rangers" to arrest Justice Kesick and seize her assets to cover a purported $176,000,000 debt. (See Case No. 1:10-cr-00321, dkt # 62).

weapon of retribution, both of which are directly related to the purpose of the enterprise which was to defraud others and seek retribution against individuals and entities that Defendants felt had displeased them.  The enterprise did not engage in a legitimate business, and Plaintiff has presented proof of Ulloa's intent to continue such unlawful activity against Kesick and other Ulster County officials.

Plaintiff's proof establishes that Defendants engaged in a pattern of racketeering activity through acts of mail fraud that are temporally proximate to each other, evince a common goal, are similar in their methods, are repetitive, and which constitutes a threat of continuing criminal activity beyond the period during which the predicate acts were performed.  Defendants' racketeering activity consisted of a series of related predicate acts that are committed over a substantial period of time, and satisfies the "pattern of racketeering activity" element of the Act under the open-ended continuity theory.

### 3.  Defendants were participants in a RICO enterprise the activities of which affected interstate commerce.

Plaintiff must also establish that Defendants were participants in a RICO enterprise the activities of which affected interstate commerce.  An enterprise for RICO purposes includes "any union or group of individuals associated in fact." 18 U.S.C. § 1961(4); Pahmer v Greenberg, 926 F. Supp. 287, 300 (E.D.N.Y 1996) aff'd sub nom. Shapiro v Cantor, 123 F.3d 717 (2d Cir. 1997).  "For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004)(citation and internal quotation marks omitted). The enterprise, however, must be distinct from the pattern of

14

activity in which it engages. Kottler v. Deutsche Bank AG, 607 F. Supp.2d 447, 458 (S.D.N.Y.2009).  The enterprise must also have a "longevity sufficient to permit these associates to pursue the enterprise's purpose," Boyle v. United States, 556 U.S. 938, 129 S. Ct. 2237, 2243–44, 173 L. Ed.2d 1265 (2009), and the enterprise's purpose must affect interstate commerce.

Plaintiff has established that Defendants were participants in the "Tri- Republic Assembly," which is a group of persons subscribing to the "sovereign citizen" movement. See United States v. Ulloa, Case No. 1:10-CR-00321, dkt # 103, Trial Tr. at 61-62.  The Tri-Republic Assembly is comprised of individuals from the states of New York, New Jersey and Vermont. Id. at 61.  Defendant Ulloa personally appeared before a "de jure" court of this group in Ulster County which called for their "county Rangers" to arrest Kesick and/or seize her assets to cover a purported $176,000,000 debt. Id.; see also United States v. Ulloa, Case No. 1:10-CR-00321, dkt # 62 (a "summons" from the "Assembly" purporting to order certain individuals, including Plaintiff, to appear before the "Judicial Department of the Assembly"); Kesick Dec. at ¶ 45.

Defendants, acting in concert with each other and purportedly with members of the Tri-Republic Assembly, mailed to Kesick and others, and filed with the New York State Supreme Court, "Demands", "Orders", "Writs" and "Criminal Complaints" falsely claiming to be owed $176,000,000 from Plaintiff. See Kesick Dec. at ¶¶ 9-14, Ex. E, F, G and H; United States v. Ulloa, Case No. 1:10-CR-00321, dkt 103, Trial Tr. at 103-115.  This enterprise consisted of a number of individuals acting in concert, and the enterprise itself was distinct from the pattern of mail fraud activity in which it engaged.   Further, the enterprise existed for a sufficient period of time to pursue its purpose of, *inter alia,*

15

defrauding and inflicting retribution upon multiple individuals and entities as demonstrated by Ulloa's conduct in his criminal trial and in the instant case. These facts satisfy the enterprise requirement of a RICO claim.

Finally, the mail fraud predicate crimes satisfy the interstate commerce element for civil RICO claims. See Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983); see also DeFalco, 244 F.3d at 309; Tavakoli-Azar v. Crescent Mgmt. Inc., 1999 WL 1052016 (S.D.N.Y.1999); Khaimi v. Schonberger, 664 F. Supp. 54, 60 (E.D.N.Y.), aff'd. 838 F.2d 1203 (2d Cir.1987).  Based on the foregoing, Plaintiff has established that Defendants directly or indirectly participated in an enterprise the activities of which affected interstate commerce thereby satisfying prongs 5-7 of the of the RICO test

### 4.  RICO injury and Causation

A RICO plaintiff "can only recover to the extent that ... [s]he has been injured in h[er] business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).  Thus, Plaintiff must show injury to "business or property," and demonstrate that such injury was "by reason of" the substantive RICO violation under both factual and proximate causation. Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir.) (quoting 18 U.S.C. § 1964(c)), cert. denied, 540 U.S. 1012, 124 S. Ct. 532, 157 L. Ed.2d 424 (2003); see Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006); Holmes v. Sec. Inv. Protection Corp., 503 U.S. 258, 259 (1992); Breslin Realty Dev. Corp. v. Schackner, 457 F Supp 2d 132, 136-37 (E.D.N.Y. 2006).

> Proximate cause, in this context, refers not to the foreseeability of harm to a plaintiff, but instead to the directness of the relationship between the purported enterprise's alleged criminal acts and the plaintiff's injuries. McBrearty v. Vanguard Group, Inc., 353 Fed. Appx. 640, 641–42 & n. 1 (2d Cir. 2009).  Acts that merely "furthered, facilitated, permitted or concealed an

injury which happened or could have happened independently of the act" do
not directly cause that injury, and thus do not proximately cause it. DeSilva
v. North Shore–Long Island Jewish Health Sys., Inc., 770 F. Supp.2d 497,
524 (E.D.N.Y. 2011) (quoting Red Ball Interior Demolition Corp. v.
Palmadessa, 874 F. Supp. 576, 587 (S.D.N.Y.1995)).

Picard v. Kohn, --- F. Supp.2d ----,  2012 WL 566298, at *3 (S.D.N.Y. Feb. 12, 2012).

Defendants' actions plainly caused Kesick to incur legal expenses in defending

against the bogus lawsuits and fraudulent liens.  In this regard, Kesick has established a

RICO injury proximately caused by the racketeering activity.  See Sykes v. Mel Harris and

Associates, LLC, 757 F. Supp.2d 413, 427-28 (S.D.N.Y. 2010).[4]

While the filing of the false liens surely damaged Kesick's creditworthiness rating

which, in turn, could have caused damage to her business or property interests, Plaintiff

has not presented evidence of actual damage in this regard.  Without this evidence,

summary judgment cannot be granted on the portion of Plaintiff's claims seeking to

recover for the damages arising from the negative impact on her credit rating. See Elsevier

Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 310  (S.D.N.Y. 2010)(A plaintiff can

adequately plead RICO damages by alleging lost profits where they constitute an injury to

plaintiff's business, were proximately caused by the alleged racketeering, and are not

merely speculative.); cf. McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 228-29 (2d Cir.

2008) (reasoning that a RICO plaintiff cannot recover benefit of the bargain or

"expectancy" damages in "fraud in the inducement" cases because RICO "compensates

only for injury to 'business or property,'" not for injury to an expectation interest that would

---

[4](Finding a RICO injury sufficient to confer standing where "defendants' pursuit of default judgments
and attempts to enforce them against plaintiffs proximately caused [plaintiffs] injuries, ... which include the
freezing of personal bank accounts and incurring of legal costs to challenge those default judgments.")(citing
Baisch v. Gallina, 346 F.3d 366, 373-74 (2d Cir. 2003)).

17

not have existed absent the alleged RICO violation) (*quoting* 18 U.S.C. § 1964(c)).

Further, although Kesick avers that Defendants' racketeering activities caused her mental strain and distress arising from her fear of Defendants and their co-conspirators in the Tri- Republic Assembly, "RICO provides recovery for injury to business and property; it does not provide recovery for physical and emotional injuries." Williams v. Dow Chemical Co., 255 F. Supp.2d 219, 225 (S.D.N.Y. 2003)(citing cases).  Thus, RICO damages are not available for this portion of her claims.

Based on the foregoing, summary judgment is granted on Plaintiff's First, Second and Third Claims to the extent she seeks to recover for legal expenses in defending against the bogus lawsuits and fraudulent liens, and the expenses incurred in this regard will be tripled. The motion is denied as to other sought after damages.  Kesick is directed to submit proof of her expenses incurred in defending against Defendants' racketeering activities, and Defendants will then have the opportunity to submit opposition.  The Court will then determine whether a genuine question of material fact exists as to the expenses incurred such to require a trial on this issue.

### 5.  Injunctive Relief

As indicated above, Plaintiff seeks various forms of injunctive relief.  Section 1964(a) authorizes the district courts to:

> prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: . . . imposing reasonable restrictions on the future activities . . . of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce . . . .

18 U.S.C. § 1964(a).

18

"The Court thus has the power under RICO to enter reasonable injunctions against RICO violators restricting their future business activities.  Congress intended the courts to grant injunctive relief to prevent RICO violators from returning to a particular type of organization or certain lines of business 'to corrupt anew.'"  United States v. Bonanno Organized Crime Family of La Cosa Nostra, 683 F. Supp. 1411, 1441 (E.D.N.Y.1988), aff'd, 879 F.2d 20 (2d Cir.1989) (quoting 116 Cong. Rec. 592 (1970) (remarks of Sen. McClellan); 115 Cong.Rec. 9568 (1969) (remarks of Sen. McClellan); Senate Report at 82).

Due to the nature of the RICO violations established here, the Court will permanently enjoin and retrain Defendants from:

> (1) filing or participating, directly or indirectly, in any future lawsuits in the Federal Courts as against Plaintiff Susan Kesick, her family or her property without first obtaining approval of a Judge of this Court; and

> (2) from filing any liens or other purported interest on Plaintiff Susan Kesick's personal or real property.

Plaintiff has not, however, established entitlement under § 1964(a) to the injunctive relief she seeks which would prohibit Defendants from associating with the Tri-Republic Assembly, or any of its members, for any commercial purpose; or that would grant Plaintiff and members of her family orders of protection.  This relief appears beyond the authority granted by § 1964(a) in that it does not prevent Defendants from returning to the particular type of organization that formed the basis of the RICO violations.

### c.  Default Judgment

Plaintiff also seeks default judgment against Defendants on the non-RICO claims pursuant to Rule 37(b) and (c).  Rule 37(b) provides that when a party fails to comply with

19

a discovery order, a court may impose sanctions, including "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).  Rule 37(c)(1)(C) provides that, when a party fails to provide Rule 26 disclosures, the Court may, *inter alia*, "impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."

Rule 37 sanctions maybe imposed in the discretion of the court. S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 143 (2d Cir. 2010).  However, the Second Circuit has "consistently recognized that Rule 37 sanctions are applicable in 'extreme circumstances,' where 'a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault.'"  Robertson v. Dowbenko, 443 Fed. Appx. 659, 660 (2d Cir. 2011)(quoting John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir.1988) (internal quotation marks omitted)); see also Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990).

> In "evaluating a district court's exercise of discretion" to impose Rule 37 sanctions, we have relied upon factors including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (internal quotation marks omitted).  Rule 37 sanctions, including the most severe, "may be imposed ... against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result" in a sanction. Valentine v. Museum of Modern Art, 29 F.3d 47, 50 (2d Cir.1994) (affirming dismissal sanction after a pro se plaintiff failed to appear for his deposition); see also Bobal, 916 F.2d at 764 (explaining that, before the district court dismissed a case as a Rule 37 sanction, the district court should have informed pro se litigant that violation of a court order would result in such a dismissal).

Robertson, 443 Fed. Appx. at 660-61.

Plaintiff asserts that Defendants failed to provide any discovery despite that the magistrate judge "carefully explained to the Defendants their duties to supply . . . their Rule 26(a) disclosures at the Rule 16 conference," and despite that Defendants acknowledged receiving Plaintiff's Interrogatories and Document Requests.  See Pl. MOL, p. 11.  Nevertheless, Plaintiffs have failed to establish that Defendants failed to comply with a discovery order.  Even assuming that the magistrate judge's explanation of the dictates of Rule 26(a) could be considered a discovery order, Plaintiff has failed to establish that Defendants were warned of the sanction of a default judgment being taken against them if they did not respond.  Moreover, there is no indication that Plaintiff sought to enforce its discovery rights by seeking a compliance order.  Under these circumstances, the Court does not find that this case constitutes an extreme circumstance where a default is required.  However, and to move this case to finality, Plaintiff is granted leave to file, within sixty (60) days, a second summary judgment motion addressed to the state common law claims.[5]

## V.    CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment [dkt. # 13]  is **granted in part and denied in part.**

The motion is granted on Plaintiff's behalf and against Defendants Richard Enrique Ulloa and Luis Wilfredo Rivera as to liability on the First, Second, and Third Claims to the extent Plaintiff seeks to recover treble damages arising from the legal costs and expenses incurred defending against the bogus lawsuits and fraudulent liens by Defendants Ulloa

---

[5]The instant motion neither addresses the merits of these claims, nor does it put Defendants on notice that a substantive determination would be sought on such claims.

21

and Rivera. The motion is denied as to other sought after damages.  Kesick is directed to

submit proof within sixty (60) days of her expenses incurred in the defending against

Defendants' racketeering activities, and Defendants will then have an additional sixty (60)

days to submit opposition, if any, to the sought after damages.  The Court will then

determine whether a genuine question of material fact exists as to the expenses incurred

such to require a trial on any such issues.

Due to the nature of the RICO violations established here, Defendants Richard

Enrique Ulloa and Luis Wilfredo Rivera are **permanently enjoined and retrained from**:

(1) filing or participating, directly or indirectly, in any future lawsuits in the
Federal Courts against Plaintiff Susan Kesick, her family, or her property
without first obtaining approval of a Judge of this Court; and

(2) filing any liens or other purported interest on Plaintiff Susan Kesick's
personal or real property.

The motion for other forms of injunctive relief is **denied.**

The motion for a default judgment on the state common law claims is **denied.**

Plaintiff is granted leave to file, within sixty (60) days of the date of this Decision and

Order, a second summary judgment motion on the state common law claims.[6]

All claims against John Doe are dismissed without prejudice.

**IT IS SO ORDERED**

**Dated:** July 11, 2012

Thomas J. McAvoy
Senior, U.S. District Judge

---

[6]The instant motion does not address the merits of these claims, nor does it put Defendants on notice
that a substantive determination would be sought on such claims.

22